## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. BARNOCKY,** | : | **CIVIL ACTION NO. 1:19-CV-1658** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **E. BRADLEY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff John J. Barnocky ("Barnocky"), a federal inmate who was housed at all relevant times at the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"), commenced this action pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).[1]  (Doc. 1).  Named as defendants are several staff members at USP-Canaan.  (<u>Id.</u>)  Presently ripe for disposition is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal

---

[1] In <u>Bivens</u>, the United States Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

Rule of Civil Procedure 56.[2]  (Doc. 21).  For the reasons set forth below, the court

will grant defendants' motion for summary judgment.

## I.   <u>Factual Background & Procedural History</u>[3]

### A.   **Background**

At all relevant times, Barnocky was housed in the Special Housing Unit

("SHU") at USP-Canaan.  (Doc. 35, Statement of Material Facts, ¶¶ 1-2).

Defendant Walters is employed as a Physician Assistant ("PA") at USP-

Canaan.  (<u>Id.</u> at ¶ 3).  An inmate who is housed in the SHU at USP-Canaan can

request to be seen by health services staff in several different ways.  (<u>Id.</u> at ¶ 4).

---

[2]  Defendants contend that Barnocky failed to exhaust the available administrative remedies with respect to all claims in the complaint prior to filing this action.  Because defendants rely on documents outside the pleadings to support this argument, the court will address the exhaustion argument under the summary judgment standard.  By order dated January 7, 2021, the court placed the parties on notice that it may consider exhaustion in its role as fact finder under <u>Small v. Camden County</u>, 728 F.3d 265 (3d Cir. 2013).  (Doc. 33) (citing <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018)).  The order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (<u>Id.</u>)

[3]  Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  <u>Id.</u>  Unless otherwise noted, the factual background herein derives from defendants' Rule 56.1 statement of material facts and supporting exhibits.  (Doc. 35; Docs. 25-1, 25-2).  Barnocky did not file a response to defendants' statement of material facts.  The court accordingly deems the facts set forth by defendants to be undisputed.  <u>See</u> LOCAL RULE OF COURT 56.1.  <u>See also</u> (Doc. 32 ¶ 3) (advising Barnocky that failure to file a responsive statement of material facts would result in the facts set forth in defendants' statement of material facts being deemed admitted).

If an inmate has an immediate, urgent need for medical attention, he can verbally notify any Bureau of Prisons ("BOP") staff member at any time. (<u>Id.</u> at ¶ 5). If the inmate has a non-urgent matter, he can submit a written sick call slip to the staff member distributing medication to SHU inmates each morning in the pill line. (<u>Id.</u> at ¶ 6). After the morning pill line, the collected requests are submitted to the provider who will be performing rounds in the SHU later that morning, known as sick call rounds. (<u>Id.</u> at ¶ 7). Previously, the procedure was different and the health services staff member performing sick call rounds would go to each range in the SHU and see any inmate who had a sick call slip at his door, rather than having the sick call slip submitted in advance in the morning pill line staff. (<u>Id.</u> at ¶ 8). Regardless of the procedure, it is not uncommon for a provider performing sick call rounds in the SHU to be stopped by an inmate who has not submitted a written request to be seen. (<u>Id.</u> at ¶ 9). In these situations, the provider generally asks the inmate the reason he is requesting to be seen by health services. (<u>Id.</u> at ¶ 10). If the provider determines that the issue requires immediate attention, the provider will see the inmate at that time. (<u>Id.</u> at ¶ 11). If the provider determines that the issue does not require immediate attention, the inmate is instructed to submit a written request to pill line staff the following morning. (<u>Id.</u> at ¶ 12).

If an inmate has a question that does not require him to be seen or is requesting information, he can submit a written request, known as a cop-out. (<u>Id.</u> at ¶ 13). When an inmate is seen by a provider in the SHU, depending upon the nature of the inmate's complaints, he may be seen at his cell door or removed from his cell to be seen in a medical exam room within the SHU. (<u>Id.</u> at ¶ 14).

The BOP has a multi-tier administrative remedy process which allows an inmate to seek formal review of a complaint related to any aspect of his confinement.  (Id. at ¶ 15).  An administrative remedy may be rejected at any level if it is not properly or timely submitted.  (Id. at ¶ 16).  Inmates are required to first present their complaints to staff and attempt to reach informal resolution by presenting the complaint through a BP-8 Informal Resolution Attempt form.  (Id. at ¶¶ 17, 18).  A BP-8 must be submitted within 20 days from the date of the event which is the subject of the remedy.  (Id. at ¶ 19).  If informal resolution is unsuccessful, the inmate may seek relief from the warden by submitting a BP-9 Request for Administrative Remedy.  (Id. at ¶ 20).  A BP-9 must be submitted within 20 days of the date on which the basis for the request occurred.  (Id. at ¶ 21).  If the inmate is dissatisfied with the warden's response to a BP-9, the inmate may seek relief from the Regional Director by submitting a BP-10 Regional Administrative Remedy Appeal.  (Id. at ¶ 22).  A BP-10 must be submitted within 20 days from the denial of the BP-9.  (Id. at ¶ 23).  If the inmate is dissatisfied with the Regional Director's response, the inmate may seek relief from the BOP's Central Office by submitting a BP-11 Central Office Administrative Remedy Appeal.  (Id. at ¶ 24).  A BP-11 must be submitted within 30 days from the denial of the BP-10.  (Id. at ¶ 25).  The Central Office is the final administrative appeal.  (Id. at ¶ 26).  An administrative remedy appeal is not considered to be fully exhausted until it is decided on the merits by the BOP Central Office.  (Id. at ¶ 27).

### B.   Facts Regarding Barnocky's Medical Treatment

Barnocky received considerable treatment while housed at USP-Canaan; the following is a brief summary.  On March 6, 2019, Barnocky stopped defendant PA-C Walters while she was making sick call rounds and complained of shortness of breath.  (Id. at ¶ 28).  Barnocky was removed from his cell, and defendant Walters treated him in an exam room in the SHU.  (Id. at ¶ 29).  Defendant Walters took Barnocky's vitals and performed an examination.  (Id. at ¶ 35).  Upon examination of Barnocky's lungs, defendant Walters noted diffuse mild expiratory wheezing in all fields and scattered rhonchi that cleared with cough.  (Id. at ¶ 36).  Defendant Walters diagnosed Barnocky with acute bronchitis and prescribed a Prednisone taper.  (Id. at ¶ 37).

On March 8, 2019, Barnocky stopped defendant Walters while she was making sick call rounds in the SHU and requested Tylenol for pain in his neck and pain in his chest from coughing.  (Id. at ¶ 38).  Defendant Walters prescribed a short-term supply of acetaminophen.  (Id. at ¶ 39).

On March 11, 2019, defendant Walters spoke to Barnocky at his cell door while she was making rounds in the SHU.  (Id. at ¶ 40).  Barnocky reported feeling much better following bronchitis treatment.  (Id. at ¶ 41).  Barnocky denied suffering from any fevers, coughing, or wheezing.  (Id. at ¶ 42).

On March 22, 2019, Barnocky requested to go back on his pain medications to treat his history of chronic neck and back pain and arthritis in the neck.  (Id. at ¶ 43).  In the months following Barnocky's arrival at USP-Canaan, while he was housed in general population, several medications were discontinued after

Barnocky failed to have required labs drawn on five separate occasions. (Id. at ¶ 44). The lab work was necessary due to the nature of the medications Barnocky was taking. (Id. at ¶ 45). Additionally, Barnocky failed to consistently show up to pill line to receive and take the medications. (Id. at ¶ 46). Defendant Walters reviewed Barnocky's most recent lab results and noted a mild decrease in thyroid stimulating hormone but otherwise noted his liver and renal function were normal. (Id. at ¶ 48). Defendant Walters prescribed acetaminophen tablets and planned to consider meloxicam after a few weeks. (Id. at ¶ 51).

On March 26, 2019, Barnocky stopped defendant Walters while she was making sick call rounds in the SHU and stated that he was still in pain. (Id. at ¶ 52). Defendant Walters and Barnocky discussed trying Tylenol for a few weeks and slowly adding back other medications, such as meloxicam, if needed. (Id. at ¶ 54). Barnocky acknowledged the plan and stated that he just wanted to informed defendant Walters of his pain. (Id. at ¶ 55).

On May 3, 2019, Barnocky submitted a sick call slip stating that the acetaminophen was not helping his severe back pain. (Id. at ¶ 61). Defendant Walters responded by reminding Barnocky that, as he had discussed with another provider on April 24, 2019, he was recently prescribed lamictal to treat his chronic pain. (Id. at ¶ 63).

On May 20, 2019, defendant Walters noted that Barnocky refused his lamictal medication. (Id. at ¶ 68). When defendant Walters tried to discuss the use of lamictal for chronic pain, Barnocky became agitated and said he would go on a hunger strike if defendant Walters "didn't do something." (Id. at ¶ 72).

On March 3, 2020, defendant Walters saw Barnocky at his cell door in the SHU for a follow-up visit after another provider adjusted his medications about six weeks prior to this encounter.  (Id. at ¶ 79).  Barnocky was previously switched from naproxen to meloxicam and oxcarbazepine was added to his medication regimen. (Id. at ¶ 80).  Barnocky expressed moderate improvement in his pain level but noted that he suffers from chronic pain in his low back from degenerative disc disease. (Id. at ¶ 81).  Defendant Walters noted that there would be a follow-up visit in six to eight weeks.  (Id. at ¶ 84).

C.     **Facts Regarding Barnocky's Exhaustion of Administrative Remedies**

Between Barnocky's arrival at USP Canaan on January 7, 2019, and the filing of his complaint on September 25, 2019, Barnocky filed only two administrative remedies.  (Id. at ¶ 86).

On April 2, 2019, Barnocky filed Administrative Remedy Number 972853-F1 at USP-Canaan alleging that staff had threatened him.  (Id. at ¶ 87).  On April 4, 2019, the administrative remedy request was closed and Barnocky received an informational response.  (Id. at ¶ 88).  Barnocky did not file an appeal with the Regional Director.  (Id. at ¶ 89).

On June 13, 2019, Barnocky filed Administrative Remedy Number 982362-R1 with the Northeast Regional Office stating that he wanted to get out of prison and that staff were poisoning his food.  (Id. at ¶ 90).  On June 25, 2019, the Northeast Regional Office rejected his administrative remedy appeal because Barnocky was required to file a Request for Administrative Remedy at the institutional level for

the warden's review and signature before filing an appeal at the regional level.   (Id. at ¶ 91).  Barnocky did not file a BP-9 Request for Administrative Remedy at the institution, as instructed.  (Id. at ¶ 92).

The Administrative Remedy process at USP-Canaan has consistently been available to Barnocky.  (Id. at ¶ 93).

Barnocky filed two additional administrative remedies after filing the instant action.  (Id. at ¶ 94).  On April 10, 2020, Barnocky filed Administrative Remedy Number 1013836-F1 alleging that his property was destroyed.  (Id. at ¶ 95).  On April 14, 2020, the administrative remedy was closed because Barnocky withdrew his request.  (Id. at ¶ 96).

On April 10, 2020, Barnocky filed Administrative Remedy Number 1013837-F1 alleging that he was not getting phone calls in the SHU.  (Id. at ¶ 97).  On April 14, 2020, the administrative remedy request was closed because Barnocky withdrew his request.  (Id. at ¶ 98).

Throughout his confinement with the BOP, Barnocky submitted only one Central Office Administrative Remedy Appeal.  (Id. at ¶ 99).  Barnocky's single Central Office Administrative Remedy Appeal was dated June 15, 2017.  (Id. at ¶ 100).  The Central Office rejected this Administrative Remedy Appeal because Barnocky included new issues not previously raised in his BP-10.  (Id. at ¶ 101).  The Central Office did not decide this appeal on the merits.  (Id.)

Barnocky has never exhausted his Administrative Remedies for any issue related to his confinement while at USP-Canaan.  (Id. at ¶ 102).  Before filing his complaint, Barnocky did not file any administrative remedies related to medical

care he received at USP-Canaan.  (Id. at ¶ 103).  Before filing his complaint, Barnocky did not file any administrative remedies related to destruction of property, including legal documents, while at USP-Canaan.  (Id. at ¶ 104).

### D.   Procedural History

Barnocky commenced this <u>Bivens</u> action on September 26, 2019, setting forth eighteen various claims against twenty-three different defendants.  (Doc. 1).  On November 26, 2019, the court performed its mandatory screening pursuant to the Prison Litigation Reform Act ("PLRA"),[4] and provided Barnocky an opportunity to file an amended complaint.  (Docs. 14, 15).  Barnocky failed to file an amended complaint.  Therefore, by order dated March 17, 2020, the court deemed the complaint filed, dismissed eight defendants, and served the complaint on the remaining defendants.  (Doc. 18).

In the complaint, Barnocky alleges that defendants violated his "First and Eighth Amendment Rights, Right to proper Medical care, Right to be free from threats against my life & safety from Guards, Right to use the Law Library and have Legal Books, Right to use the phone, Right to get Hygiene Supplies."  (Doc. 1 at 4). Barnocky sets forth the following eighteen claims:

- Claim 1: On March 5, 2019, after the 4:00 p.m. count, Barnocky told defendant Burgh that he could not breath and needed to see medical.  Defendant Burgh responded: "I'm going to smash your head against the wall and then you'll really need medical," before placing him in a holding cage.  (Id. at 8, 9).

- Claim 2: In the early morning of March 6, 2019, defendant Vrabel and another correctional officer called him a "fag" and "Cho-Mo" and put him in paper

---

[4]  The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

clothes.  (<u>Id.</u> at pp. 8, 10).  Also on this date, Barnocky asserts that he was treated by medical and prescribed steroids for possible pneumonia.  (<u>Id.</u>)

- Claim 3: Between 6:00 p.m. and 8:00 p.m. on March 20, 2019, defendants Roman and Lambert trashed Barnocky's property, including his criminal case documents, personal books, stamps, and shower shoes.  (<u>Id.</u> at 8, 10). Barnocky also states that he was placed in paper clothes on this date.  (<u>Id.</u> at 10).  Defendant Helms allegedly stated that "he's going to stop that."  (<u>Id.</u>)

- Claim 4: On March 27, 2019, Barnocky was placed in paper clothes, became sick after changing his diet to common fare, and developed a fear of being poisoned.  (<u>Id.</u> at 8, 10).

- Claim 5: On April 14, 2019, defendant Roslare trashed Barnocky's property, including legal work, personal books, stamps, and shower shoes.  (<u>Id.</u>)

- Claim 6: In the evening of April 18, 2019, defendant Burgh took a BP-8 and a BP-9 form, signed by defendant Warden Bradley, from Barnocky's cell.  (<u>Id.</u> at 8-9).  In the forms, Barnocky explained that he feared his life was in danger.  (<u>Id.</u>)

- Claim 7: During the day watch of April 22, 2019, Barnocky was transported to medical observation for suicide watch.  (<u>Id.</u> at 7-8, 10).  Barnocky alleges that a correctional officer placed him in tight handcuffs that hurt his left wrist, and he did not receive any medical attention, reports, or photographs of his wrist.  (<u>Id.</u>)

- Claim 8: After dinner on May 9, 2019, Barnocky states that he "(Subpoenaed phone call)".  (<u>Id.</u> at 8, 10).

- Claim 9: During the 9:00 p.m. count on June 19, 2019, defendants Roman and McCarthy allegedly opened Barnocky's legal mail and told his cellmate to read the mail.  (<u>Id.</u>)

- Claim 10: During the day watch on July 4, 2019, defendant Vrabel told Barnocky that his pre-sentence investigation report said that he was a sex offender.  (<u>Id.</u> at 8, 11).  Barnocky denies that he was ever charged with or convicted of a sex offense.  (<u>Id.</u> at 11).  Defendants Vrabel, Kudey, Besten, and Fuller allegedly drew a phallic symbol on the wall, bribed Barnocky's cellmate to assault him, and put him in paper clothes.  (<u>Id.</u>)

- Claim 11: On July 19, 2019, at 2:00 p.m., defendants Price, McCarthy, and Lambert refused to provide Barnocky with hygiene supplies.  (<u>Id.</u> at 8, 11).

- Claim 12:  In the early morning of July 30, 2019, defendants Klinger and Fuller said that they intended to "mess with Big Mouth Barnocky.com" and took Barnocky's property, including his shower shoes, stamps, personal books, family photos, legal documents, and four manuscripts Barnocky is writing and intends to publish.  (Id.)

- Claim 13: During a walk-through on August 7, 2019, defendant Olver did not go to see Barnocky to take his BP-8 forms.  (Id.)  Instead, Barnocky gave his BP-8 forms and a letter to a different officer.  (Id.)

- Claim 14: On August 10, 2019, Barnocky complained to a chaplain about correctional officers denying him phone calls.  (Id.)  The chaplain allegedly contacted Barnocky's mother on his behalf.  (Id.)  Barnocky further states that his diet was changed to common fare because he believed someone was poisoning his food.  (Id.)

- Claim 15: In the early morning of August 16, 2019, Barnocky expressed concern to defendant Walters that his medication was being stopped, that he wrote sick calls about his pain and medication, and never received a "solid answer" explaining the medication change.  (Id. at 8, 12).  A counselor also allegedly told Barnocky that she would bring his BP-8 and BP-9 forms to him, but she did not follow through.  (Id.)

- Claim 16: On August 23, 2019, between 2:00 p.m. and 4:00 p.m., defendant Price refused to provide Barnocky hygiene supplies and read his legal mail. (Id.)

- Claim 17: After dinner on August 28, 2019, defendants McCarthy and Roman did not allow Barnocky to use the phone.  (Id.)

- Claim 18: Barnocky questions the reasons that USP-Canaan sells Bob Barker indigent soap and deodorant on SHU commissary, and gives magazine subscriptions to the SHU orderly, instead of placing the magazines in the inmates' property.  (Id.)

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 21).  The motion is fully briefed and ripe for resolution.

II.    **Legal Standard**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F.Supp.2d at 315.

III.   **Discussion**

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion

requirement is mandatory.  Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007);

Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA

applies to grievance procedures "regardless of the relief offered through

administrative procedures"); see also Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000)

(holding that that PLRA's exhaustion requirement applies to Bivens claims).

   The Third Circuit has further provided that there is no futility exception to

Section 1997e's exhaustion requirement.  See Nyhuis, 204 F.3d at 75-76.  Courts

have typically required across-the-board exhaustion by inmates seeking to pursue

claims in federal court.  See id.  Additionally, courts have interpreted this

exhaustion requirement as including a procedural default component, holding that

inmates must fully satisfy the administrative requirements of the inmate grievance

process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372

F.3d 218 (3d Cir. 2004); Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006)

(nonprecedential)  (providing that "there appears to be unanimous circuit court

consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by

exhausting administrative remedies after the filing of the complaint in federal

court").  Courts have also concluded that inmates who fail to complete the prison

grievance process in a full and timely manner are barred from subsequently

litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir.

2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008) (nonprecedential).

   This broad rule favoring full exhaustion allows for a narrowly defined

exception; if the actions of prison officials directly caused the inmate's procedural

default as to a grievance, the inmate will not be required to strictly comply with

this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

However, courts also recognize a clear "reluctance to invoke equitable reasons to

excuse [an inmate's] failure to exhaust as the statute requires."  Davis v. Warman,

49 F. App'x 365, 368 (3d Cir. 2002) (nonprecedential).  Thus, an inmate's failure

to exhaust will be excused only "under certain limited circumstances," Harris

v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005) (nonprecedential), and an inmate

can defeat a claim of failure to exhaust only by showing "he was misled or that there

was some extraordinary reason he was prevented from complying with the

statutory mandate."  See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections

officials, or some other extraordinary circumstances warranting a departure from

strict compliance with the exhaustion requirement, courts frequently reject inmate

requests for their failure to exhaust to be excused.  An inmate, therefore, cannot

excuse a failure to comply with these grievance procedures in a timely manner by

simply claiming that his efforts constituted "substantial compliance" with this

statutory exhaustion requirement.  Harris, 149 F. App'x at 59.  Furthermore, an

inmate cannot avoid this exhaustion requirement by merely alleging that the

administrative policies were not clearly explained to him.  Warman, 49 F. App'x at

368.  Consequently, an inmate's confusion regarding these grievances procedures

does not, alone, excuse a failure to exhaust.  See Casey v. Smith, 71 F. App'x 916 (3d

Cir. 2003) (nonprecedential).

Here, defendants argue that Barnocky failed to exhaust his administrative

remedies with respect to all of the Bivens claims set forth in the complaint.  (Doc. 25

at 17-24).  Defendants have supported this argument with record evidence,
including the declaration of BOP Attorney E. Frymoyer and the BOP
Administrative Remedy Generalized Retrieval.  (Doc. 25-1).  In an attempt to refute
defendants' argument in favor of summary judgment, Barnocky merely recites
caselaw that an inmate's failure to exhaust will be excused under limited
circumstances, and sets forth a conclusory statement that staff "trashed" his
administrative remedies.  (Doc. 34 at 2; see also Doc. 1 at 15).  Barnocky does not
provide any evidence, via an affidavit, declaration, or any other statement made
under the penalty of perjury to support any claim that his administrative remedies
were destroyed or that the administrative remedy process was not available to him.
Indeed, defendants' evidence demonstrates that the Administrative Remedy
process at USP-Canaan was consistently available to Barnocky.  (Doc. 35 ¶ 93).

The complaint alleges that all claims arose while Barnocky was housed in the
SHU, beginning on March 5, 2019.  (Doc. 1 at 8; Doc. 35 ¶ 2).  The undisputed
evidence establishes that Barnocky filed two administrative remedies between
March 5, 2019 and the filing of the complaint on September 26, 2019, and that he did
not exhaust either of those remedies.  (Doc. 35 ¶¶ 86, 87, 90).  On April 2, 2019,
Barnocky filed Administrative Remedy Number 972853-F1 asserting that staff
threatened him.  (Id. at ¶ 87; Doc. 25-1 at 28).  On April 4, 2019, the administrative
remedy request was closed and Barnocky received an informational response.
(Doc. 35 ¶ 88; Doc. 25-1 at 28).  Barnocky did not file an appeal with the Regional
Director.  (Doc. 35 ¶ 89).

On June 13, 2019, Barnocky filed Administrative Remedy Number 982362-R1 with the Northeast Regional Office stating that he wanted to get out of prison and that staff were poisoning his food.  (Id. at ¶ 90; Doc. 25-1 at 28).  On June 25, 2019, the Northeast Regional Office rejected Barnocky's administrative remedy appeal because he was required to file a Request for Administrative Remedy at the institution level before filing an appeal at the regional level.  (Doc. 35 ¶ 91; Doc. 25-1 at 28).  Rather than comply with the directives of the Regional Office and file a BP-9 at the institutional level, Barnocky chose to abandon his administrative remedy. (Doc. 35 ¶ 92).

The uncontroverted evidence reflects that Barnocky never filed any administrative remedies with respect to the medical care he received at USP-Canaan, destruction of property or legal documents, the use of restraints, phone usage or access, access to or availability of the administrative remedy process, or access to hygiene supplies.  (Doc. 35 ¶¶ 103-108).  With respect to the two administrative remedies that Barnocky pursued, he never appealed either of these grievances to final review.  (Id. at ¶¶ 86-92).  In light of the undisputed facts and relevant evidence of record, the court concludes that Barnocky has failed to produce any evidence to overcome defendants' summary judgment motion, and cannot argue against summary judgment by merely relying on unsupported assertions, inferences based upon a speculation or conjecture, or unverified, conclusory allegations.  Under Rule 56, Barnocky was required to go beyond his pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact.  See Celotex Corp., 477 U.S. at 324.  Because he has failed

to do so, the court concludes that Barnocky has not properly exhausted any of his

<u>Bivens</u> claims, and defendants are entitled to the entry of summary judgment in

their favor.

**IV.**   <u>**Conclusion**</u>

  The court will grant defendants' motion (Doc. 21) for summary judgment and

enter judgment in their favor.  An appropriate order shall issue.



       /S/ CHRISTOPHER C. CONNER
       Christopher C. Conner
       United States District Judge
       Middle District of Pennsylvania


Dated:  March 2, 2021